UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - -:
MONTE HERRING,                        : 09 Civ. 7610 (BSJ) (JCF)
                                      :
             Plaintiff,               :      REPORT AND
                                      :      RECOMMENDATION
      - against -                     :
                                      :
SUPERINTENDENT,                       :
                                      :
             Respondent.              :
- - - - - - - - - - - - - - - - - - -:
TO THE HONORABLE BARBARA S. JONES, U.S.D.J.:

      Monte Herring brings this petition for a writ of habeas corpus
pursuant to 28 U.S.C. § 2254, challenging his inability to appeal
his conviction under New York state law on three counts of burglary
in the first degree, three counts of attempted robbery in the first
degree, one count of criminal possession of a weapon in the second
degree, and one count of criminal possession of a weapon in the
third degree.  He contends that (1) his trial counsel provided him
with ineffective assistance by failing to file a notice of appeal
and giving him incorrect advice regarding the proper filing of the
notice and (2) this ineffective assistance violated his due process
rights by depriving him of his right to appeal under state law.
For the reasons that follow, I recommend that the petition be
dismissed as untimely.

Background

      On August 17, 2005, Mr. Herring was convicted of several
counts of burglary, robbery, and criminal possession of a weapon in
the County Court for Orange County following a jury trial.
(Petition ("Pet.") at 1-2).  On October 7, 2005, the County Court
sentenced the petitioner to several concurrent determinate terms,

1

the longest of which was twelve years, to be followed by five years of post-release supervision. (Pet. at 1; Affirmation of Andrew R. Kass dated June 29, 2010, ¶ 4).

During his sentencing, the petitioner notified his attorney that he wished to appeal his conviction, and he alleges that counsel assured him he would do so on Mr. Herring's behalf. (Affirmation of Monte Herring dated Nov. 2, 2009 ("Herring Aff.") at 2). Sometime in November 2005, the petitioner, who was by that time incarcerated pursuant to his sentence, received a completed Notice of Appeal, Notice of Motion for poor person's relief and assignment of counsel, accompanying affidavit, and mailing envelopes from his attorney, along with instructions to notarize and mail them. (Herring Aff. at 3, ¶ 2; Letter of Bernard D. Brady dated Oct. 17, 2005 ("Brady 10/17/05 Letter"), attached as part of Exh. 1 to Herring Aff.; Letter of Bernard D. Brady dated Oct. 27, 2005 ("Brady 10/27/05 Letter"), attached as part of Exh. 1 to Herring Aff.; Notice of Appeal dated Oct. 10, 2005 ("Notice of Appeal"), attached as part of Exh. 1 to Herring Aff.; Affidavit of Monte Herring dated Oct. 10, 2005 ("Herring 10/10/05 Aff."), attached as part of Exh. 1 to Herring Aff.; Notice of Motion dated Oct. 10, 2005 ("Notice of Motion"), attached as part of Exh. 1 to Herring Aff.). The papers were addressed to the Appellate Term of the New York State Supreme Court, and Mr. Herring mailed the completed papers there on November 10, 2005. (Herring Aff. at 3, ¶ 3; Brady 10/17/05 Letter; Notice of Appeal; Herring 10/10/05 Aff.; Notice of Motion). The petitioner then waited for six months

and, concerned that he had not heard anything regarding his appeal, wrote both to his counsel and to the Appellate Term inquiring about the status of his case. (Herring Aff. at 3, ¶ 4). Neither replied. (Herring Aff. at 3, ¶ 4). After waiting another ninety days, the petitioner inquired again as to the status of his appeal, but heard nothing. (Herring Aff. at 3, ¶ 5). During this time, the petitioner's father and sister were also attempting to contact his attorney, but to no avail. (Affidavit in Support of Motion CPL § 450.30(3) to Vacate Sentence for Purpose of Appeal dated Dec. 19, 2008, attached as part of Exh. 11 to Respondent's Memorandum of Law and Record of Exhibits ("Resp. Memo."), ¶ 9). Only after a third inquiry did Mr. Herring receive notice on March 22, 2007 that his appeal had been improperly filed with the Appellate Term and should instead have been addressed to the Appellate Division, Second Department of the New York State Supreme Court. (Herring Aff. at 3, ¶ 5; Letter of the Supreme Court of the State of New York dated March 22, 2007, attached as Exh. 2 to Herring Aff.).

Less than a month later, on April 11, 2007, Mr. Herring sent a letter to the Appellate Division, Second Department, seeking leave to file a late appeal. (Letter of Monte Herring dated April 11, 2007, attached as part of Exh. 3 to Resp. Memo.; Affirmation of David R. Huey dated Aug. 15, 2007, attached as Exh. 7 to Resp. Memo., ¶ 5). On June 18, 2007, the Appellate Division, which treated the letter as a request for permission to file a late notice of appeal under Section 460.30 of New York Criminal Procedure Law, denied the motion. (Decision & Order dated June 18,

3

2007, attached as Exh. 3 to Herring Aff.).  The petitioner requested reconsideration of this motion by the Appellate Division; this request was denied on September 14, 2007. (Decision & Order dated Sept. 14, 2007, attached as Exh. 5 to Herring Aff.). Finally, Mr. Herring applied for leave to appeal that decision to the New York Court of Appeals; the application was denied on January 10, 2008 because the order of the Appellate Division was not appealable under New York Criminal Procedure Law. (Certificate Dismissing Application dated Jan. 10, 2008, attached as Exh. 7 to Herring Aff.).  Unsure what to do next, Mr. Herring filed a motion pursuant to Section 450.30(3) of the Criminal Procedure Law with the Orange County Court on December 19, 2008.  (Herring Aff. at 4, ¶¶ 10-11; Notice of Motion Pursuant to CPL 450.30(3) dated Dec. 19, 2008 ("450.30 Motion"), attached as part of Exh. 11 to Resp. Memo.).  He requested that the trial court re-sentence him in order to allow him a renewed opportunity to appeal; the application was rejected on April 29, 2009 as beyond the court's statutory authority. (450.30 Motion, ¶¶ 1, 4; Decision and Order dated April 29, 2009, attached as Exh. 13 to Resp. Memo.).

        Mr. Herring submitted the instant petition for a writ of habeas corpus on June 21, 2009.  Pursuant to an order of the Court, he then proffered an affirmation stating why he believed his petition should not be deemed barred by the statute of limitations. (Herring Aff.; Order dated Feb. 9, 2010).

Discussion

        The respondent argues that the petitioner's habeas corpus

4

petition is time-barred under the Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA"), 28 U.S.C. § 2244(d)(1).  The AEDPA imposes a one-year limitations period for habeas corpus petitions that runs from the latest of:

> (A) the date on which the judgment [of conviction by a state court] became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

18 U.S.C. § 2244(d)(1).

Mr. Herring's conviction became final upon the expiration of the thirty day window for appeal following his sentencing (not including the Sunday on which the thirtieth day fell): November 7, 2005.  N.Y. Crim. Proc. Law § 460.10(1)(a); see also Morton v. Ercole, No. 08 Civ. 252, 2010 WL 890036, at *2 (S.D.N.Y. March 10, 2010).  If, as the respondent contends, the AEDPA one-year period commenced on November 7, 2005, the petitioner had until November 7, 2006 to file his petition, yet he did not do so until June 21, 2009.[1]  Mr. Herring advances three reasons why his petition is

---

[1] This is the date of filing under the "prison mailbox rule," which provides that the filing date is deemed to be the date on

nonetheless timely:  (1) the factual predicate of his current claim was not available to him until long after November 7, 2006; (2) he is entitled to equitable tolling due to the ineffective assistance of his trial counsel; and (3) the statute of limitations should be tolled during the pendency of his properly filed state claims. Even if Mr. Herring is correct on each of these points, however, he nevertheless waited an additional 397 days before filing his petition.  His petition is therefore untimely under the statute of limitations established by the AEDPA.

A.   Factual Predicate

The AEDPA's limitations period does not begin running until "the date on which the factual predicate of the claim . . . could have been discovered through the exercise of due diligence."  28 U.S.C. § 2244(d)(1)(D).  In construing the identical statute of limitations created by the federal habeas corpus statute, 28 U.S.C. § 2255, the Second Circuit has held that the factual predicate provision "is not a tolling provision that extends the length of the available filing time by excluding certain periods that post-date the start of the limitations clock from the calculation of how much time has run.  Rather, it resets the limitations period's beginning date, moving it from the time when the conviction became final . . . to the later date on which the particular claim accrued." Wims v. United States, 225 F.3d 186, 190 (2d Cir. 2000); see also Rivas v. Fischer, 294 Fed. Appx. 677,

which an inmate's court submission is received by prison officials. See, e.g., Noble v. Kelly, 246 F.3d 93, 97 (2d Cir. 2001) (extending prison mailbox rule to habeas corpus petitions).

678-79 (2d Cir. 2008) (applying <u>Wims</u> to state habeas claim under §
2244).

Courts have applied this rule to cases in which petitioners
believe an appeal has been taken in their case but belatedly
discover that none had been filed.  <u>See</u> <u>Wims</u>, 225 F.3d at 190 ("The
proper task in a case such as this one is to determine when a duly
diligent person in petitioner's circumstances would have discovered
that no appeal had been filed."); <u>accord</u> <u>Gonzalez-Ramos v. United
States</u>, No. 05 Civ. 3974, 2007 WL 1288634, at *7 (S.D.N.Y. May 2,
2007); <u>Rodriguez v. New York</u>, No. 01 Civ. 9374, 2004 WL 5575050, at
*2 (S.D.N.Y. Sept. 7, 2004) ("<u>Rodriguez II</u>") ("[P]ursuant to
controlling Second Circuit authority, the AEDPA one-year statute of
limitations did not begin to run until petitioner 'would have
discovered,' through the exercise of due diligence, 'that no notice
of appeal had been filed.'" (quoting <u>Wims</u>, 225 F.3d at 190)).  Some
courts have even found that, where a petitioner's underlying claim
for habeas relief is premised on the denial of his right to a
direct appeal, the limitations period begins only upon the
Appellate Division's denial of permission to file a late notice of
appeal.  <u>See</u> <u>Perich v. Mazzuca</u>, No. 05 CV 2942, 2007 WL 2455136, at
*6 (E.D.N.Y. Aug. 23, 2007) ("[T]he Second Department's denial of
[the petitioner]'s motion purporting to file a notice of appeal
. . . should be considered the 'factual predicate' that triggers
the limitation period under § 2244(d)(1)(D), the 'discovery' of
which occurred when [the petitioner] received notice of the
decision."); <u>see also</u> <u>DiCenzi v. Rose</u>, 452 F.3d 465, 468 (6th Cir.

7

2006) ("[The petitioner] first claims that the appellate court improperly refused to allow him to file a delayed appeal.  This claim accrued when the [state court] denied [the petitioner]'s motion for delayed appeal, on September 25, 2001.  Therefore, under 28 U.S.C. § 2244(d)(1), the AEDPA 'clock' began running on September 25, 2001.").

The date on which a person acting with due diligence would have discovered that no appeal had been filed is "a fact-specific issue the resolution of which depends, among other things, on the details of [the petitioner's] post-sentence conversation with his lawyer and on the conditions of his confinement." Wims, 225 F.3d at 190-91.  The standard for diligence is "objective," but requires only reasonable diligence, not "the maximum feasible diligence." Gonzalez-Ramos, 2007 WL 1288634, at *7 (internal quotation marks omitted).

Here, Mr. Herring mistakenly believed that an appeal had been taken after he followed his attorney's erroneous instructions for filing an appeal.  He then exercised due diligence in attempting to stay abreast of the progress of his appeal by contacting the court and his attorney, on his own and through relatives who were not incarcerated, repeatedly over a seventeen month period. See, e.g., Wims, 225 F.3d at 190 ("[D]ue diligence plainly did not require [the petitioner] to check up on his counsel's pursuit of an appeal on . . . the very day on which [his] conviction became final absent appeal."); Gonzalez-Ramos, 2007 WL 1288634, at *8 (collecting cases); Rodriguez II, 2004 WL 5575050, at *3 (holding that eighteen

months was acceptable time to wait for notice of appeal and that
"[t]he advice petitioner received from other inmates -- that he
should be prepared to wait several years to learn of the result of
his appeal -- was sound").  The AEDPA limitations period thus
started no earlier than March 22, 2007, the date on which the state
court finally notified him that his appeal had been filed in the
wrong court and Mr. Herring thus became aware that he had received
ineffective assistance from his counsel and had been denied his
right to appeal.  Indeed, because part of Mr. Herring's claim is
based on the denial of his right to a first appeal of his
conviction, the limitations period arguably should begin on June
18, 2007, the date on which the Appellate Division denied his
request to file a late appeal.  (Decision & Order dated June 18,
2007, attached as Exh. 3 to Herring Aff.); see Perich, 2007 WL
2455136, at *6 ("[The petitioner]'s first claim -- that he was
unconstitutionally denied his right to direct review -- simply did
not accrue until the Appellate Division denied direct review
. . . .").  However, for the reasons that follow, it is immaterial
whether the period runs from March 22 or June 18.

     B.   Equitable Tolling

     Mr. Herring would also be entitled to equitable tolling of the
AEDPA statute of limitations for the time during which he believed
that his conviction had been properly appealed.  The statute of
limitations created by the AEDPA is not jurisdictional, and
therefore may be equitably tolled when circumstances warrant.
Holland v. Florida, __ U.S. __, __, 130 S. Ct. 2549, 2560-61

(2010).  In order to benefit from equitable tolling, a petitioner must show that "extraordinary circumstances prevented him from filing his petition on time" and that he "acted with reasonable diligence throughout the period he seeks to toll."  Smith v. McGinnis, 208 F.3d 13, 17 (2d Cir. 2000).  Courts will only toll the statute of limitations in "rare and exceptional circumstance[s]," id., and the Second Circuit "has seldom found extraordinary circumstances sufficient to warrant equitable tolling," Adkins v. Warden, 585 F. Supp. 2d 286, 296 (D. Conn. 2008), aff'd, 354 Fed. Appx. 564 (2d Cir. 2009), cert. denied, Adkins v. Semple, 131 S. Ct. 262 (2010).  "[T]he proper inquiry is not how unusual the circumstance alleged to warrant tolling is among the universe of prisoners, but rather how severe an obstacle it is for the prisoner endeavoring to comply with AEDPA's limitations period."  Diaz v. Kelly, 515 F.3d 149, 154 (2d Cir. 2008).

In this case, Mr. Herring was plainly diligent in trying to discover the status of his appeal and promptly seeking recourse in the state courts once he realized that no appeal had been filed.  See, e.g., Vasquez v. United States, __ F. Supp. 2d __, __, No. 09 Civ. 3845, 2010 WL 3304256, at *3 (S.D.N.Y. Aug. 19, 2010) ("[The petitioner] exercised reasonable diligence by writing to his counsel and the Clerk of the Court . . . to inquire about the status of his appeal."); Melendez v. United States, Nos. 09 Civ. 2524, 09 Civ. 2525, 2010 WL 1790415, at *3 (S.D.N.Y. May 5, 2010) ("While it is wise not to 'pester' a court with 'frequent inquiries

as to whether a pending motion is decided,' it is reasonable to expect that sometime during the year Petitioner would check on the appeal status." (internal citations omitted) (quoting <u>Diaz</u>, 515 F.3d at 155)); <u>cf.</u> <u>Plowden v. Romine</u>, 78 F. Supp. 2d 115, 119 (E.D.N.Y. 1999) (finding no diligence where petitioner failed to contact court or his attorney regarding status of his case).

Additionally, extraordinary circumstances prohibited Mr. Herring from filing his petition during this time. First, the petitioner's counsel was ineffective in his assistance to the petitioner. Although "attorney error normally will not constitute the extraordinary circumstances required to toll the AEDPA limitations period," "at some point, an attorney's behavior may be so outrageous or so incompetent as to render it extraordinary." <u>Baldayaque v. United States</u>, 338 F.3d 145, 152 (2d Cir. 2003). In this case, Mr. Herring's counsel erred in several ways. First, he failed to file a notice of appeal as assigned counsel is required to do by New York law. <u>See</u> N.Y. Comp. Codes R. & Regs. tit. 22, § 606.5(b)(1); <u>Rodriguez II</u>, 2004 WL 5575050, at *1 ("Petitioner's counsel's failure to file the notice of appeal also violated petitioner's right to effective assistance of counsel."). Second, he provided the petitioner with materials -- including pre-addressed envelopes -- directing the petitioner's appeal to the wrong court. And third, he did not respond when the petitioner and his family contacted him about the petitioner's appeal.

Although these errors are ordinary, rather than extraordinary, examples of attorney negligence, <u>see</u> <u>Holland</u>, __ U.S. at __, 130 S.

11

Ct. at 2564, in the context of filing a direct appeal of a criminal
conviction, an otherwise minor error can become an "extraordinary
circumstance" sufficient to toll the statute of limitations, see
Vasquez, 2010 WL 3304256, at *2 ("A lack of responsiveness by
counsel to Petitioner's communications can, in certain
circumstances, be considered an extraordinary circumstance.");
Morton, 2010 WL 890036, at *4 ("An 'extraordinary circumstance' may
suffice for equitable tolling purposes if there is a 'sufficient
claim of attorney abandonment' where 'a diligent client
persistently questioned the lawyer as to whether he had filed the
complaint in time, and he affirmatively represented to her that he
had.'" (quoting Seitzinger v. Reading Hospital and Medical Center,
165 F.3d 236, 237-38 (3d Cir. 1999))); cf. Plowden, 78 F. Supp. 2d
at 119 (faulting petitioner for failure to contact attorney
requesting updates on case).  Because the result of Mr. Herring's
attorney's otherwise ordinary negligence was to deny him recourse
to an appeal as of right, the prejudice to the petitioner is such
that the error can be said to be an "extraordinary circumstance"
that tolls the statute of limitations.  See generally Roe v.
Flores-Ortega, 528 U.S. 470, 477 (2000) ("We have long held that a
lawyer who disregards specific instructions from the defendant to
file a notice of appeal acts in a manner that is professionally
unreasonable."); id. at 483 ("The . . . denial of the entire
judicial proceeding itself, which a defendant wanted at the time
and to which he had a right, [] demands a presumption of
prejudice."); United States v. DiBella, 314 F. Supp. 446, 449 (D.

Conn. 1970) ("A state court's holding that failure of counsel to file [] papers on time operates of itself to foreclose appeal is thus tantamount to a finding that the appellant was inadequately represented by counsel. . . .   Whether in fact counsel was ineffective . . . is irrelevant in view of the consequences to the petitioner.").

Not only was Mr. Herring injured by his attorney's negligence, but he was thwarted in his efforts to be diligent by the failure of the court system to reply to his requests for information.  In many cases, courts have noted the ease with which diligent petitioners could discover the status of their case simply by contacting the appeals court; in contrast, the court in this case delayed for a year in responding to the petitioner's requests for information. See, e.g., Morton, 2010 WL 890036, at *4 ("Petitioner's later success in contacting the Appellate Division and receiving an answer about his appeal 'demonstrates the ease with which he could have stayed informed about his case.'" (quoting Plowden, 78 F. Supp. 2d at 119)); see also Melendez, 2010 WL 1790415, at *3 ("Generally speaking, the failure to receive notice of the denial of an appeal can potentially constitute an 'extraordinary circumstance.'" (citing Diaz, 515 F.3d at 154-56)).  In fact, the petitioner's Notice of Appeal was added to the docket in his case without comment, such that even if the petitioner had consulted the public record, it would have appeared that an appeal of his case had been taken.  (Orange County Clerk's Office, Document Detail, attached as part of Exh. 11 to Resp. Memo.); cf. Morton, 2010 WL

890036, at *3 ("Nor was he precluded from checking a publicly available docket sheet to determine if his appeal had been filed."); Delacruz v. United States, No. 06 Civ. 5666, 2006 WL 2129335, at *3 n.34 (S.D.N.Y. July 31, 2006) ("The lack of any appeal from his conviction was evident on this court's docket, which is a public record." (quoting United States v. Barrett, No. 04-C-0855-C, 2005 WL 978105, at *1 (W.D. Wis. April 26, 2005))).

A petitioner's own error, combined with reasonable diligence in trying to rectify that error, can be sufficient to equitably toll the statute of limitations when the petitioner is stymied by circumstances outside his control. See Gilbert v. Wolfe, No. Civ. A 03-5807, 2004 WL 945146, at *3 (E.D. Pa. April 28, 2004) ("[The petitioner] originally filed his petition for allowance of appeal in his collateral appeal in the wrong court and then exercised diligence in attempting to rectify his error.  His is a case that falls within the carefully carved exceptions to strict enforcement of the habeas limitations period."), report and recommendation adopted by 2004 WL 1126026 (E.D. Pa. May 19, 2004).  Given that the petitioner in this case was caused to err by the negligence of his attorney and then repeatedly contacted both his attorney and the court but received no response, equitable tolling should be applied to the time between October 7, 2005, when the petitioner was sentenced, and March 22, 2007, when the Appellate Term of the Supreme Court finally notified the petitioner that his appeal had not been properly filed.

However, the extraordinary circumstances that thwarted his

efforts to appeal his conviction ended after Mr. Herring learned that no appeal had been filed.  At that point, he had open to him the entire universe of state and federal collateral challenges to his conviction.  And, although he diligently pursued a request for a late appeal in the state court, that effort concluded with the denial of leave to appeal to the Court of Appeals on January 10, 2008.  Between that date and December 19, 2008, the petitioner did not take any further legal action.  See Morton, 2010 WL 890036, at *2 ("Courts generally have found that periods of delay lasting for more than a year do not exhibit due diligence.").  Although the petitioner asserts that this period of inaction was the result of his being unsure how to proceed (Herring Aff. at 4, ¶ 10), ignorance of the law does not justify equitable tolling of the statute of limitations, even for pro se petitioners.  See, e.g., Gonzalez-Ramos, 2007 WL 1288634, at *10 (collecting cases).  Therefore, the statute of limitations may not be tolled between June 18, 2007 (or March 22, 2007, if that is the more appropriate trigger for commencement of the limitations period) and the filing of the instant petition.  Mr. Herring's petition is thus untimely unless a sufficient portion of the time between June 18, 2007 and June 21, 2009 is tolled by the state court's consideration of properly filed collateral challenges to Mr. Herring's conviction.

C.   Properly Filed State Claims

In addition to the exceptions to the AEDPA statute of limitations created by 28 U.S.C. § 2244(d)(1), § 2244(d)(2) provides that "[t]he time during which a properly filed application

15

for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection."  "An application is 'filed,' as that term is commonly understood, when it is delivered to, and accepted by, the appropriate court officer for placement into the official record." Artuz v. Bennett, 531 U.S. 4, 8 (2000).  In order to be "properly filed," an application need only have met the procedural requirements for filings, and need not contain claims that are themselves "meritorious and free of procedural bar." Id. at 8-9.  Further, "'a state-court petition [for post-conviction or other collateral review] is "pending" from the time it is first filed until finally disposed of and further appellate review is unavailable under the particular state's procedures.'" Hizbullahankhamon v. Walker, 255 F.3d 65, 70 (2d Cir. 2001) (quoting Bennett v. Artuz, 199 F.3d 116, 120 (2d Cir. 1999)).  The respondent contends that the petitioner's motion to file an untimely appeal pursuant to New York Criminal Procedure Law § 460.30 was not properly filed. (Resp. Memo. at 4-5).  However, even assuming that all of the petitioner's applications in state court -- including his § 460.30 application for a late appeal, his motion for reconsideration of his § 460.30 motion, his § 460.20 application for a certificate of appeal, and his § 450.30 motion -- were "properly filed" as required by the AEDPA, they do not toll the statute of limitations for a sufficient period to render the

petition timely.[2]  See Rodriguez I, 2003 WL 289598, at *13 & n.8.

Assuming that the limitations period began to run on June 18, 2007,

the statute arguably was tolled by the petitioner's pending

§ 460.30 motion and appeal from that date until January 10, 2008,

when the Court of Appeals denied the petitioner a certificate to

appeal.  However, from January 10, 2008, another 344 days passed

before the petitioner filed his § 450.30 motion in the County

Court, leaving him with only 21 days remaining in the limitations

period.  (Affidavit of Service dated Dec. 19, 2008, attached as

part of Exh. 11 to Resp. Memo.).  Although Mr. Herring communicated

with the Court in September of 2008, this communication was plainly

a request for legal assistance and not a properly filed motion.

See Lebron v. McGinnis, No. 05 CV 1370, 2010 WL 2652223, at *2

(N.D.N.Y. April 1, 2010) (finding that letter indicating

---

[2] In fact, the § 460.30 motion was filed after the one-year
deadline for filing such applications, see N.Y. Crim. Proc. L. §
460.30(1); thus, it very well may not have been "properly filed" as
the Supreme Court has defined that term, see Pace v. DiGuglielmo,
544 U.S. 408, 417 (2005) ("[T]ime limits, no matter their form,
are 'filing' conditions.").  What is more, because Mr. Herring's
application for late appeal under § 460.30 is not appealable, it
was not "pending" following the Appellate Division's first order,
and the statute should not be tolled in between the June 18, 2007
Order and the petitioner's application for reconsideration of that
motion, which was filed some time between June 18 and August 8,
2007.  (Letter of Appellate Division, Second Department dated Aug.
8, 2007, attached as Exh. 4 to Herring Aff.); see also Rodriguez v.
New York, No. 01 Civ. 9374, 2003 WL 289598, at *13 (S.D.N.Y. Feb.
11, 2003) ("Rodriguez I"), report rejected on other grounds, 2004
WL 5575050.  For the same reason, Mr. Herring's § 460.20
application for a certificate to appeal was not "properly filed,"
and does not toll the statute.  Cortorreal v. Artuz, 281 F. Supp.
2d 524, 528 (E.D.N.Y. 2003); Raynor v. Dufrain, 28 F. Supp. 2d 896,
899 (S.D.N.Y. 1998).  Nonetheless, this determination is immaterial
since the petition is untimely even tolling the entire period
during which Mr. Herring was requesting leave to file a late
appeal.

forthcoming application was not "properly filed" application), <u>report and recommendation adopted by</u> 2010 WL 2652215 (N.D.N.Y. June 25, 2010).

The petitioner then waited an additional 53 days after the County Court issued its order before submitting the instant petition to prison officials for filing. (Pet.; Decision and Order dated April 29, 2009, attached as Exh. 13 to Resp. Memo.). There is no evidence of any undue delay in providing notice of this decision to the petitioner, nor any unusual difficulties in accessing the prison library or other necessary resources. Twenty-one days was a sufficient window of opportunity for filing the habeas petition; furthermore, the limited time remaining in the statutory period was the result of the petitioner's substantial period of inaction between January 10 and December 19, 2008. Accordingly, the instant petition is untimely under the AEDPA statute of limitations. The petitioner's only remaining recourse lies in the state courts, where no statute of limitations would bar him from bringing a writ of error coram nobis. See, e.g., New York v. Syville, __ N.Y. 3d __, Nos. 153, 154, 2010 WL 4005564 (Oct. 14, 2010).

Conclusion

For the reasons set forth above, I recommend that Mr. Herring's petition for a writ of habeas corpus be dismissed as untimely. Pursuant to 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and 6(d) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from this date to file written objections

to this Report and Recommendation.  Such objections shall be filed
with the Clerk of the Court, with extra copies delivered to the
chambers of the Honorable Barbara S. Jones, Room 1920, and to the
chambers of the undersigned, Room 1960, 500 Pearl Street, New York,
New York 10007.  Failure to file timely objections will preclude
appellate review.

                          Respectfully submitted,


                          JAMES C. FRANCIS IV
                          UNITED STATES MAGISTRATE JUDGE


Dated:     New York, New York
           December 2, 2010


Copies mailed this date to:

Monte Herring
05-A-5227
Green Haven Correctional Facility
P.O. Box 4000
Stormville, New York 12582

Andrew R. Kass, Esq.
Senior Assistant District Attorney
Office of the District Attorney
     of Orange County
County Government Center
Goshen, New York 10924